UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SALVADOR HERIBERTO PINEDA-RODRIGUEZ,<br><br>Defendant. | Case No. 17-CR-00061-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE**<br><br>Re: Dkt. No. 20 |

Before the Court is Defendant Salvador Heriberto Pineda-Rodriguez's ("Defendant") motion to dismiss the indictment for illegal reentry following deportation in violation of 8 U.S.C. § 1326. ECF No. 20 ("Mot."). Relying on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Defendant contends that the immigration judge who issued Defendant's 2012 removal order did not have jurisdiction to issue such an order because Defendant's Notice to Appear for his removal proceedings did not state a date, time, and place for the removal proceedings. *Id.* at 4–17. Defendant additionally contends that his 2012 removal was fundamentally unfair because the immigration judge failed to advise Defendant of his eligibility for pre-hearing voluntary departure. *Id.* at 17–23. Having considered the filings of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss the indictment with prejudice.

1
Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

## I. BACKGROUND

### A. Factual Background

On September 17, 2012, Defendant was moved from the Monterey County Jail in Salinas to a San Jose Immigration and Customs Enforcement ("ICE") facility. ECF No. 25 ("Pineda-Rodriguez Decl.") ¶ 2. There, Defendant was served with a Notice to Appear for removal proceedings under 8 U.S.C. § 1229. *See* Mot., Exh. A ("Notice to Appear"). The Notice to Appear set forth factual allegations against Defendant regarding his unlawful presence in the United States, but did not state a date and time for his removal hearing. *Id.* Instead, the Notice to Appear stated that the date and time were "to be set." *Id.*

On September 17, 2012, Defendant was also served with a Form I-826 Notification of Rights and Request for Disposition in the Spanish language. ECF No. 23-1 ("Norris Decl.") at 2, Exh. 2 ("Request for Disposition"). Defendant marked the third box, which provided that he acknowledged that he was illegally present in the United States, waived his right to a hearing before an immigration judge, and that he wanted to return to his home country as soon as arrangements could be made." *See* Request for Disposition. Deportation Officer Courtney Norris, whose declaration was filed in support of the government's opposition to the instant motion, declared that "[t]his request for disposition is referred to as Voluntary Departure." Norris Decl. at 2. Officer Norris also declared that Defendant's request was denied. *Id.* Officer Norris explained that it was the policy of the Field Office Directors[1] to not grant requests for voluntary departure to criminal aliens and that because Defendant had been convicted of transporting a controlled substance and served 178 days in jail, he would not be granted voluntary departure. *Id.* at 2–3.

In support of his instant motion, Defendant filed a declaration explaining that when he was first served with the Notice to Appear, Defendant wanted to voluntarily depart to Mexico as soon as possible. Pineda-Rodriguez Decl. ¶¶ 3–6. However, Defendant explained that the ICE officer said no and told Defendant that Defendant had to go to Arizona to meet with an immigration

---

[1] It is not immediately clear from the parties' filings whether this was the policy of the San Francisco or San Jose Field Office Directors. *Compare* Norris Decl. at 2, *with* ECF No. 34 ("Supp. Reply") at 1.

2

Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

judge. *Id.* ¶ 5. Defendant also declared that although he signed the Request for Disposition form, the officer did not explain to Defendant that this was a request for voluntary departure. *Id.* ¶ 10. Defendant also declared that the officer did not tell him that his request was denied. *Id.*

Eventually, Defendant was transferred to an ICE detention center in Eloy, Arizona. *Id.* ¶ 7. On October 4, 2012, Defendant's removal hearing took place at 58 UI detention facility in Eloy, Arizona. *See* Mot., Exh. B ("Removal Proceeding"); *see also* Mot., Exh. E ("Transcript") at 1. The Immigration Judge ("IJ") presided over the hearing in a group-style format, which included Defendant and other persons, who were assisted by a Spanish interpreter. *See* Transcript at 1. The IJ addressed all the defendants at once to explain their rights, before proceeding to discuss each individuals' case. *See id.* at 1–8. During the group hearing, the IJ advised as follows with regards to voluntary departure:

> When I call your case, I will also discuss with you whether or not there are other forms of relief available to you. This may also include but is not limited to cancelation [sic] of removal, adjustment of status or voluntary departure. If you are removable, I will also question you to see if you qualify for voluntary departure prior to the completion of proceeding. You may be eligible for voluntary departure at the beginning or at the end of proceeding.
>
> In order to qualify for voluntary departure one must establish that one is worthy of the privilege of voluntary departure and that a favorable exercise of discretion is warranted. Factors to be considered include the following; manner of entry into the United States, years of residence in the United States, family, business and societal ties, record of employment, compliance with other laws, a systemic of practice [sic], humanitarian consideration, law enforcement contact, prior immigration history and any record of good conduct or misconduct.
>
> In order to qualify for what is called pre conclusion voluntary departure, or in other words, voluntary departure prior to the completion of proceedings one must agree to waive appeal of all other immigration issues. If you are granted pre conclusion voluntary departure and if during the period of voluntary departure, you file either motions to reopen or motions to reconsider[,] then the grant of voluntary departure will be terminated automatically and an alternate order of removal will take effect immediately. If you fail to depart within the voluntary departure period, there is a presumptive civil monetary penalty of $3,000.00.

*Id.* at 4–5.

The IJ also addressed the Defendant individually. *See id.* at 8–18. The conversation as to

3

Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

the availability of voluntary departure during the individual portion of the removal proceeding occurred as follows. First, the IJ asked the Defendant about his family, and Defendant explained that he has two children, aged three years and one and half years, who were born in the United States and whose mother is a United States citizen. *Id.* at 12–13. Defendant is not married to the mother of his children. *Id.* at 13. Then the IJ asked the government about the government's position regarding voluntary departure. *Id.* at 13. Government counsel responded "opposed." *Id.* The IJ next asked how long Defendant has lived in the United States, to which Defendant replied he had been in the United States for ten years and had never left the United States during that ten-year period. *Id.* at 13–14. The IJ discussed options of cancellation or expulsion. *Id.* at 14. However, the government pointed out Defendant was convicted in August of 2012 of transport of a controlled substance in violation of California Health and Safety Code 11379. *Id.* The IJ then stated: "Now, as I said, I don't know if you are eligible for the benefit or not but I could give you [a] pre-application to review and I can postpone your case if that's what you want." *Id.* at 14–15.

The IJ then again asked the government about the government's position regarding voluntary departure on discretion. *Id.* at 15. Government counsel responded "opposed." *Id.* The IJ then advised Defendant that he "appear[ed] to be eligible for flight of voluntary departure." *Id.* at 15. The IJ continued, "[i]f you're granted voluntary departure, it may make it easier for you to return legally to this country. Let's say your children petition for you to receive an immigration benefit or you marry the mother of the children, or something along those lines." *Id.* "But the earliest available date that I can give a voluntary departure hearing is October 23[,] [2012]." *Id.*

Defendant asked about the voluntary departure option, and the IJ clarified that the hearing would be on October 23, 2012, and that voluntary departure is not guaranteed because it would require the presentation of evidence and the weighing of negative and positive factors, so the IJ could not state the outcome until that time. *Id.* at 16. Defendant replied "[n]o, I don't want to fight anything, I want to leave today." *Id.* the IJ stated: "Then the record shall reflect that the respondent was offered . . . a hearing for voluntary departure. Respondent declined . . . the hearing and has opted for an order of removal today to the state of Mexico." *Id.* at 17.

4

Defendant waived his right to appeal. *Id.* On October 4, 2012, the IJ ordered Defendant removed to Mexico. *Id.* at 17; *see also* Mot., Exh. D ("Removal Order"). On October 5, 2012, Defendant was removed. *See* Mot., Exh. D ("Warrant of Removal").

According to Defendant's motion, although the IJ discussed post-conclusion voluntary departure, the IJ failed to inform Defendant that he was also eligible for pre-hearing voluntary departure. Reply at 1–2. Defendant added in his declaration that at his 2012 removal hearing, he did not know he was eligible for pre-hearing voluntary departure and that Defendant only became aware that he was eligible for pre-hearing voluntary departure when his attorney in the instant case discussed it with Defendant. Pineda-Rodriguez Decl. ¶¶ 11, 13. Defendant explained that he told the IJ that he did not want to wait until October 23, 2012 for a hearing on voluntary departure because Defendant wanted to leave sooner and had already asked the ICE officers to let him leave voluntarily when he was in San Jose. *Id.* ¶ 12. Defendant also declared that his family would have been able to give him money to purchase a flight to Mexico if he had been granted pre-hearing voluntary departure. *Id.* ¶ 14. Finally, Defendant declared that if the IJ had told him during his 2012 removal hearing that he was eligible for pre-hearing voluntary departure and did not have to continue his case until October 23, 2012, he "would have requested to voluntarily depart as soon as possible and then contacted [his] family to get the financial assistance for [his] return trip to Mexico." *Id.* ¶ 15.

**B. Procedural History**

On February 2, 2017, a grand jury in the Northern District of California returned an indictment, charging Defendant with one count of a violation of 8 U.S.C. § 1326, Illegal Re-Entry Following Deportation. ECF No. 2. Defendant filed the instant motion to dismiss on January 2, 2018. *See* Mot. On January 28, 2019, the Ninth Circuit issued its ruling in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), in which the Ninth Circuit held that an immigration judge had jurisdiction over removal proceedings even though the Notice to Appear lacked a date and time for the removal proceedings. Therefore, on January 28, 2019, the parties filed a stipulation with a proposed order to modify the briefing schedule so as to provide the parties with more time to

5

address *Karingithi,* ECF No. 21. The Court granted that request on January 29, 2019. ECF No. 22.

The government filed an opposition on February 4, 2019. ECF No. 23 ("Opp'n). Defendant replied on February 15, 2019. ECF No. 24 ("Reply"). On February 15, 2019, Defendant filed a declaration in support of the Reply, ECF No. 25, and on February 21, 2019, Defendant filed a supplemental exhibit to his Reply, ECF No. 26.

On March 5, 2019, the Court requested additional briefing from the parties on the pre-hearing voluntary departure issue. ECF No. 28. On March 13, 2019, the government filed its additional brief. ECF No. 33 ("Supp. Opp'n"). On March 14, 2019, Defendant filed his supplemental brief. ECF No. 34 ("Supp. Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

### B. Collateral Attack on a Deportation

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya–Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted). To

6
Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

demonstrate that a prior deportation cannot serve as the basis of an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya–Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

## III. DISCUSSION

The Defendant argues that the Indictment must be dismissed, and that the removal was "fundamentally unfair" for two reasons. First, Defendant argues that his 2012 removal cannot be relied upon to support the instant prosecution because the IJ lacked jurisdiction to order Defendant's removal. *See* Mot. at 4–17. In particular, Defendant relies on the United States Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), to argue that a Notice to Appear must contain a time and place for a removal hearing in order to vest the IJ with jurisdiction. Because Defendant's Notice to Appear in the underlying removal proceeding did not contain time and date information, Defendant argues the IJ did not have jurisdiction to issue a removal order. Second, Defendant argues that his 2012 removal was fundamentally unfair because the immigration judge failed to advise Defendant of his eligibility for pre-hearing voluntary departure and failed to provide Defendant an opportunity to apply for that remedy, and that the IJ's failure to advise substantially prejudiced Defendant. *Id.* at 17–23. The Court explores each of Defendant's arguments in turn.

### A. Defendant's *Pereira*-Based Challenge Fails in Light of *Karingithi*

Defendant filed his motion on January 2, 2019. *See* Mot. On January 28, 2019, the Ninth Circuit issued its ruling in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), in which the Ninth Circuit held that an immigration judge had jurisdiction over removal proceedings even

7
Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

though the Notice to Appear lacked a date and time for the removal proceedings. Specifically, the Ninth Circuit held as follows.

First, the Immigration and Nationality Act ("INA") regulations and not the INA statute governed the requirements for a Notice of Appear and thus defined when the immigration judge's jurisdiction vests. *Id.* at 1158–59 (citing 8 C.F.R. § 1003.13, 1003.14(a)). Under the relevant regulations, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "[c]harging document means the written instrument which initiates a proceeding before an Immigration Judge," and includes a "Notice to Appear." 8 C.F.R. § 1003.13. Both the INA statute and regulations define a "Notice to Appear." The statute at 8 U.S.C. § 1229(a)(1)(G)(i) provides that in removal proceedings, written notice referred to as a "Notice to Appear" shall be given to the alien specifying, among other things, the "time and place at which the proceedings will be held." The regulation at 8 C.F.R. § 1003.15 provides that a Notice to Appear "must also include" much of the same information as required by statute under 8 U.S.C. § 1229(a), except that the requirement of the "time and place" of the removal proceeding is omitted. The Ninth Circuit in *Karingithi* explained that because the regulations define when jurisdiction vests, the regulatory definition for "Notice to Appear" also necessarily governs when a Notice to Appear is sufficient for jurisdictional purposes. *Karingithi*, 913 F.3d at 1160. Therefore, the Ninth Circuit explained that pursuant to the regulations, a Notice to Appear need not include time and date information to vest jurisdiction with the immigration judge. *Id.*

Second, the Ninth Circuit found Pereira inapplicable to the issue regarding an immigration judge's jurisdiction in removal proceedings. *See id.* at 1160–61. The Ninth Circuit explained that *Pereira* was limited to the narrow context of the stop-time rule. *Id.* Moreover, the Ninth Circuit was particularly persuaded by the fact that the stop-time rule at issue in Pereira *concerned* the stop-time statute (8 U.S.C. § 1229b(d)(1)) that specifically cross-referenced 8 U.S.C. § 1229(a), the statute defining a "Notice to Appear." *See id.* By contrast, the regulation regarding an immigration judge's jurisdiction in removal proceedings does not cross-reference 8 U.S.C. §

8

1229(a), the statute defining a "Notice to Appear." As the Ninth Circuit stated, "[t]here is no 'glue' to bind § 1229(a) and the jurisdictional regulations [at issue here]: the regulations do not reference § 1229(a), which itself makes no mention of the IJ's jurisdiction." *Id.*

Therefore, applying the Ninth Circuit's reasoning in *Karingithi*, the Court finds that in the instant case, Defendant's Notice to Appear that lacked date and time information was still sufficient to vest the immigration judge in Defendant's underlying removal proceeding with jurisdiction. Thus, Defendant's collateral attack on this ground fails.

Further, the Court notes that the instant Defendant had actual notice of his removal proceeding because he was detained and physically brought to his removal proceeding. *See Karingithi*, 913 F.3d at 1159 ("We also note that the petitioner, Serah Njoki Karingithi, had actual notice of the hearings."). Such actual notice defeats Defendant's arguments regarding due process and prejudice. *See, e.g.*, *Farhoud v. I.N.S.*, 122 F.3d 794, 796 (9th Cir. 1997) ("Due process is satisfied if service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien."); *United States v. Bischsel*, 395 F.3d 1053, 1056 (9th Cir. 2005) ("[A]ctual notice is the best notice.").

Finally, in his reply, Defendant raises several arguments for why *Karingithi* was wrongly decided. *See* Reply at 7–15. Defendant also suggests that the Court should stay his case pending resolution of the petition for rehearing en banc in *Karingithi* and any subsequent petition for certiorari. *Id.* at 15. Although the Ninth Circuit panel may ultimately prove incorrect in its determination, "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Thus, the Court declines Defendant's invitation to second guess the Ninth Circuit's *Karingithi* decision and DENIES Defendant's request to stay his case pending the petition for rehearing en banc in *Karingithi*.

**B. Defendant's § 1326 Indictment Must be Dismissed Because the IJ Failed to Meaningfully Advise Defendant of His Right to Seek Pre-Hearing Voluntary Departure**

The Court now turns to Defendant's argument that his 2012 removal was fundamentally unfair because the immigration judge failed to advise Defendant of his eligibility for pre-hearing voluntary departure and failed to provide Defendant the opportunity to apply for that remedy. Mot at 17–23; Reply at 1–7. The Court first discusses whether there was a due process violation and second, whether Defendant was prejudiced. The Court third discusses the exhaustion and judicial review requirement. *See* 8 U.S.C. § 1326(d). For the reasons given below, the Court GRANTS Defendant's motion to dismiss the indictment.

**1. Due Process Violation**

First, the Court agrees with Defendant that Defendant was deprived of due process during the 2012 removal because he was not adequately informed of his right to apply for pre-hearing voluntary departure.

"[W]here the record contains an inference that the petitioner is eligible for relief from deportation, 'the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.'" *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000); 8 C.F.R. § 240.11(a)(2). "The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding." *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks, alterations, and citation omitted); *see also Arrieta*, 224 F.3d at 1079 (explaining that the requirement to advise the alien of the possibility of relief and give him the opportunity to develop the issue is "mandatory."). The Ninth Circuit has held that this requirement specifically applies to voluntary departure, *see United States v. Arias–Ordonez*, 597 F.3d 972 (9th Cir. 2010) (finding due process violation when IJ failed to inform alien of eligibility for pre-hearing voluntary departure relief); *United States v. Ortiz–Lopez*, 385 F.3d 1202 (9th Cir. 2004) (same), and that the advice must be "meaningful[ ]." *See United States v. Melendez–Castro*, 671 F.3d 950, 952 (9th Cir. 2012) (finding that the alien "was not meaningfully advised of his right to seek voluntary departure").

1  As an initial matter, the government's argument regarding the fact that Defendant signed a Form I-826, that indicated that Defendant acknowledged that he was illegally present in the United States, waived his right to a hearing before an immigration judge, and that Defendant wanted to return to his home country as soon as arrangements could be made, *see* Request for Disposition, is of no matter because the government has not demonstrated that Defendant understood the Form I-826 to be a request for voluntary departure. *See* Pineda-Rodriguez Decl. ¶¶ 3–6, 10. Moreover, regardless of the Field Office Director's policy to not grant requests for voluntary departure to criminal aliens, the Ninth Circuit has specifically held that immigration judges have an independent duty to advise aliens of their apparent eligibility for relief during removal proceedings. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001) ("The immigration judge shall inform the respondent of his or her apparent eligibility to apply for . . . [a waiver of deportation] and shall afford the respondent an opportunity to make application therefore during the hearing" (alterations in original) (citations omitted)). Indeed, in the Ninth Circuit, an immigration judge's failure to advise an alien regarding his right to pre-hearing voluntary departure is a due process error and constitutes a valid ground for a collateral attack of an underlying removal in a prosecution under 8 U.S.C. ¶ 1326. *See, e.g.*, *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (failure to advise of pre-hearing voluntary departure is due process violation); *United States v. Nungaray-Rubalcaba*, 229 F. App'x 436 (9th Cir. 2007) (same); *United States v. Baulto-Pulido*, 219 F. App'x 717 (9th Cir. 2007) (same); *United States v. Alonza-Mendoza*, 239 F. App'x 330 (9th Cir. 2007) (same); *United States v. Lopez-Menera*, 542 F. Supp. 2d 1025 (N.D. Cal. 2008) (same).[2]

Here, the Court agrees with Defendant that the IJ did not meaningfully advise Defendant of his right to seek pre-hearing voluntary departure. The IJ's discussion of voluntary departure at

---

[2] The Court also rejects the government's argument that the hearing with the IJ occurred because Defendant himself requested a pre-hearing voluntary departure. *See* Supp. Opp'n at 1–2. That argument is not supported by the record. Indeed, the IJ did not discuss voluntary departure relief with Defendant until after she found Defendant removable. *See* Removal Hearing; *see also* Transcript.

11
Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

Defendant's removal hearing first consisted of an advisement to the entire group during the group hearing, which preceded Defendant's individual hearing. In particular, the IJ stated that:

> When I call your case, I will also discuss with you whether or not there are other forms of relief available to you. This may also include but is not limited to cancelation [sic] of removal, adjustment of status or voluntary departure. If you are removable, I will also question you to see if you qualify for voluntary departure prior to the completion of proceeding. You may be eligible for voluntary departure at the beginning or at the end of proceeding.

*See* Removal Proceeding; *see also* Transcript at 4–5. The IJ also explained during the group hearing what factors the IJ would consider during the individual hearings in order to determine if an individual was qualified for voluntary departure. *See id.*

Under Ninth Circuit law, however, the IJ's group advisement regarding pre-hearing voluntary department failed to meaningfully advise Defendant. For instance, in *United States v. Rodriguez-Arroyo*, the Ninth Circuit dismissed a § 1326 indictment because the defendant was not adequately informed of his right to apply for voluntary departure. 467 F. App'x 746, 746–48 (9th Cir. 2012). In *Rodriguez-Arroyo*, like in the instant case, the IJ advised defendant of the availability of voluntary departure during a group hearing, told the aliens about some of the benefits of voluntary departure, and advised the group that when the IJ would speak with each of them individually, the IJ would ask questions about their equities. *See id.* The Ninth Circuit found of the group advisement in *Rodriguez-Arroyo* that although defendant "was advised of the availability of voluntary departure," he "'was not meaningfully advised of his right to seek' such relief or to file an application seeking it." *Id.* at 747. Accordingly, the Ninth Circuit concluded that the defendant in *Rodriguez-Arroyo* was deprived of due process. Thus, based on the guidance in *Rodriguez-Arroyo*, the Court concludes that in the instant case, the IJ's group advisement that explained voluntary departure and advised the group that the IJ would discuss the relevant factors when the IJ would speak with each alien individually, did not meaningfully advise Defendant of his right to seek relief. In sum, because the IJ in the instant case failed to adequately advise Defendant, Defendant "never had a genuine opportunity to apply for voluntary departure or to present evidence of the factors favoring this relief." *Melendez–Castro*, 671 F.3d 950, 953–54.

12

During Defendant's individual hearing, the IJ in the instant case questioned both Government counsel and Defendant. *See* Transcript at 8–18. However, the focus of the discussion was on post-hearing voluntary departure. For instance, the IJ asked the government about the government's position regarding voluntary departure. *Id.* at 13. Government counsel responded "opposed." *Id.* The IJ next asked how long Defendant has lived in the United States, to which Defendant replied he had been in the United States for ten years and had never left the United States during that ten-year period. *Id.* at 13–14. The IJ discussed options of cancellation or expulsion. *Id.* at 14. The government pointed out Defendant was convicted in August of 2012 of transport of a controlled substance in violation of California Health and Safety Code 11379. *Id.* The IJ then stated: "Now, as I said, I don't know if you are eligible for the benefit or not but I could give you [a] pre-application to review and I can postpone your case if that's what you want." *Id.* at 14–15. The IJ then again asked the government about the government's position regarding voluntary departure on discretion. *Id.* at 15. Government counsel responded "opposed." *Id.* The IJ then advised Defendant that he "appear[ed] to be eligible for flight of voluntary departure." *Id.* at 15. The IJ continued, "[i]f you're granted voluntary departure, it may make it easier for you to return legally to this country. Let's say your children petition for you to receive an immigration benefit or you marry the mother of the children, or something along those lines." *Id.* "But the earliest available date that I can give a voluntary departure hearing is October 23[,] [2012]." *Id.* Defendant asked about the voluntary departure option, and the IJ clarified that the hearing would be on October 23, 2012, and that voluntary departure is not guaranteed because it would require the presentation of evidence and the weighing of negative and positive factors, so the IJ could not state the outcome until that time. *Id.* at 16. Defendant replied "[n]o, I don't want to fight anything, I want to leave today." *Id.* the IJ stated: "Then the record shall reflect that the respondent was offered . . . a hearing for voluntary departure. Respondent declined . . . the hearing and has opted for an order of removal today to the state of Mexico." *Id.* at 17.

The IJ's above-described individual advisement to Defendant failed to meaningfully advise Defendant of his right to seek pre-hearing voluntary departure. In particular, the IJ focused on

13

post-hearing voluntary departure when the IJ spoke individually with Defendant and Government counsel, and the IJ gave Defendant no explanation or information on the procedure or requirements for *pre*-hearing voluntary departure. Nor did the IJ ever clarify the differences between pre-hearing and post-hearing voluntary departure relief. *See Zamudio-Pena v. Holder*, 333 F. App'x 165, 168 (9th Cir. 2009) ("The IJ's failure to properly advise Zamudio–Pena of his apparent eligibility for pre-hearing voluntary departure and of the differences between pre-hearing and post-hearing voluntary departure violated his right to procedural due process."). Specifically, the IJ never explained to Defendant that he was eligible for pre-hearing voluntary departure the same day as his removal proceeding and did not need to wait for a further hearing to be granted that relief. *See, e.g.*, *Rodriguez-Arroyo,* 467 F. App'x at 747 ("[Defendant] did not say that he was not willing to depart voluntarily immediately, nor is there any reason to think that he would not have done so had the IJ explained the voluntary removal process to him."). Accordingly, the IJ's individual advisement to Defendant failed to meaningfully advise Defendant of his right to seek pre-hearing voluntary departure.

Accordingly, because Defendant was not meaningfully advised of his right to pre-hearing voluntary departure and because Defendant was not able to present factors favoring this relief, Defendant has demonstrated that his due process rights were violated. *See, e.g. Ortiz-Lopez*, 385 F.3d at 1204 (failure to advise of pre-hearing voluntary departure is due process violation).

**2. Prejudice**

A petitioner must show prejudice resulting from the due process violation in order to succeed on a motion to dismiss an indictment under 8 U.S.C. § 1326(d). *United States v. Muro–Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001). In order to establish prejudice, an alien does not have to show that he would actually have been granted relief. *Arrieta*, 224 F.3d at 1079. "Instead, he must only show that he had a 'plausible' ground for relief from deportation." *Id.* To show plausible grounds for relief, a defendant need only establish "some evidentiary basis on which relief could have been granted." *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014) (citing *United States v. Reyes-Bonilla*, 671 F.3d 1038, 1050 (9th Cir. 1049–50).

14

Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

Pre-hearing voluntary departure is available "at the alien's own expense," prior to the completion of a removal proceeding so long as: (1) the alien is not deportable for an aggravated felony; (2) the alien has not engaged in terrorist activities; and (3) the "alien was [not] previously permitted to so depart after having been found inadmissible." 8 U.S.C. §§ 1229c(a)(1), 1227(a)(2)(A)(iii), 1227(a)(4)(B).

As an initial matter, the government's reply focuses on the fact that Defendant would not have qualified for *post*-hearing voluntary departure. *See* Opp'n at 23. However, Defendant's challenge focuses on the availability of *pre*-hearing voluntary departure. The requirements for obtaining pre-hearing and post-hearing voluntary departure are different. *See In Re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999) (explaining that pre-hearing voluntary departure "requires much less from the alien"; for example, "an alien need not show that he has good moral character or that he has the financial means to depart the United States."). Thus, the government's arguments regarding post-hearing voluntary departure are not applicable to the question of whether or not Defendant has demonstrated prejudice with regards to pre-hearing voluntary departure.

Moreover, Defendant has shown that he had a plausible ground for pre-hearing voluntary departure relief from removal. None of the statutory bars would have prevented Defendant from obtaining pre-hearing voluntary departure relief. First, there is no evidence in the record that Defendant engaged in terrorist activities or that Defendant had been previously permitted to depart after having been found admissible. *See* 8 U.S.C. §§ 1229c(a)(1), 1227(a)(2)(A)(iii), 1227(a)(4)(B). Second, Defendant's August 2012 conviction for transport of a controlled substance in violation of California Health and Safety Code § 11379 does not constitute an aggravated felony for which Defendant is deportable. Although the government argues otherwise, *see* Opp'n at 23, the government does not support its contention with authority demonstrating that Defendant was convicted of an aggravated felony. Moreover, the case law cited by Defendant demonstrates that Defendant's August 2012 conviction for transport of a controlled substance in violation of California Health and Safety Code § 11379 does not constitute an aggravated felony

15
Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

for which Defendant is deportable. *See, e.g.*, *Sandoval-Lua v. Gonzales*, 499 F.3d 1121 (9th Cir. 2007) (finding petitioner's California Health and Safety Code § 11379(a) conviction to not be an aggravated felony), *overruled on other grounds by Young v. Holder*, 697 F.3d 976 (9th Cir. 2012); *Hernandez-Aguilar v. Holder*, 594 F.3d 1069, 1072 (9th Cir. 2010) (noting that the IJ granted the petitioner, who had a California Health and Safety Code § 11379 conviction, voluntary departure); *see also, e.g.*, *Lorenzo v. Whitaker*, 752 F. App'x 482 (9th Cir. 2019) (finding the methamphetamine element in California Health and Safety Code §§ 11378 and 11379(a) overbroad and not divisible, and therefore that a California Health and Safety Code § 11378 or § 11379(a) conviction cannot constitute grounds for removal); *Ortiz-Holder*, 385 F.3d at 1205 (finding that possession of a controlled substance such as cocaine, in violation of California Health & Safety Code § 11350(a), was not an aggravated felony). Finally, the Court notes that despite the government's arguments to the contrary, Opp'n at 23, Defendant's Notice to Appear said nothing about Defendant's removal being based upon any prior conviction at all, let alone an aggravated felony conviction. *See* Notice to Appear.

Moreover, Defendant has identified factors that would have weighed in favor of granting pre-hearing voluntary departure relief. *See In re Thomas*, 21 I. & N. Dec. 20, 23 (BIA 1995) (explaining that IJs may also consider "countervailing equities such as long residence here, close family ties in the United States, or humanitarian needs."). For instance, Defendant has two children, aged three years and one and a half years, who are United States citizens. Transcript at 12–13. The mother of Defendant's children is also a United States citizen. *Se id.* Defendant had lived in the United States for ten years. *Id.*; *see also* Pineda-Rodriguez Decl. ¶ 8. Defendant also had eleven siblings that lived in the United States. Pineda-Rodriguez Decl. ¶ 8. Additionally, Defendant had worked at Puebla Market in Monterey County, California for six years and had been paying taxes. *Id.* ¶ 9. These factors present significant humanitarian and public interest considerations that would counsel in favor of relief. *See, e.g.*, *Raya-Vaca*, 771 F.3d at 1207 (finding that "there is a 'compelling humanitarian interest in keeping families united,'" and that the humanitarian and public interest factors weighed in favor of granting defendant relief when his

16

partner, their children, and his mother, siblings and much of his extended family lived in the United States).

Moreover, the record reflects that Defendant would have likely sought to voluntarily depart immediately had the IJ explained the voluntary removal process to him. *See id.* at ¶ 4; Transcript at 16; *see, e.g.*, *Rodriguez-Arroyo*, 467 F. App'x at 747 ("[Defendant] did not say that he was not willing to depart voluntarily immediately, nor is there any reason to think that he would not have done so had the IJ explained the voluntary removal process to him."). Finally, Defendant and his family would have been able to pay for his flight to Mexico if he had been granted pre-hearing voluntary departure. Pineda-Rodriguez Decl. ¶ 14.

The government argues that Defendant's other criminal history, including, at the very least, one DUI conviction,[3] would constitute negative factors weighing against relief. Supp. Opp'n at 2. However, the Ninth Circuit has recognized that the positive factors that Defendant has demonstrated, such as long residence, close family ties in the United States, or humanitarian needs, weigh in favor of pre-hearing voluntary departure relief, even where the defendant had a similar criminal history to the instant Defendant. *See, e.g.*, *Vassallo-Martinez*, 360 F. App'x 742 (9th Cir. 2009) (collecting cases where the Board of Immigration Appeals has affirmed the grant of voluntary departure relief or remanded for the IJ to consider voluntary departure relief to aliens with criminal histories, including in cases where the alien's criminal history included "six criminal convictions including battery, drunkenness, and driving under the influence"; cases concerning aliens with criminal histories of assault; cases concerning aliens with criminal histories of driving under the influence; and cases concerning aliens with criminal histories of possession of a

---

[3] The parties provide no attachments substantiating the Defendant's other prior convictions besides the California Health and Safety Code § 11379 conviction. In the government's supplemental opposition, the government asserts that Defendant's criminal history also "involves several prior DUIs." Supp. Opp'n at 2. In the Defendant's Reply, Defendant asserts that that he "had a 2009 misdemeanor DUI conviction for which he was sentenced to probation and five days custody" and "a 2011 conviction for driving on a suspended license due to a DUI for which he was sentenced to probation and ten days custody." Reply. at 6 n.7. Neither party asserts that any of these other prior convictions constitutes an aggravated felony. Instead, the parties only focus on these convictions for the weighing of negative and positive factors in the prejudice analysis. *See* Supp. Opp'n at 2; Reply. at 6 n.7.

17
Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

controlled substance). By contrast, in the case cited by the government, *United States v. Ramirez-Gonzalez*, No. 5:14-cr-00-407-BLF-1, 2016 WL 3670045, at *2 (N.D. Cal. Jul. 11, 2016), the equities were much less favorable and the criminal history included assault with a caustic chemical. Specifically, the defendant in *Ramirez-Gonzalez* had thrown hydrochloric acid on his girlfriend, who was trying to leave him, and her sister. *See id.* Thus, the Court is not persuaded that *Ramirez-Gonzalez* directs this Court to find that Defendant's criminal history would preclude relief.

In sum, the Court finds that Defendant has established "some evidentiary basis on which relief could have been granted." *Raya-Vaca*, 771 F.3d at 1207. Accordingly, the Defendant has satisfied the prejudice prong.

### 3. Exhaustion and Judicial Review

Finally, the Ninth Circuit has found a defendant exempted from the exhaustion and judicial review requirements in § 1326(d) when the "IJ did not inform him that he was eligible for relief from [removal]." *Ortiz-Lopez*, 385 F.3d at 1204 n.2 (citing *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2004)). In *Ortiz-Lopez*, for instance, the Ninth Circuit explained that Defendant was exempt from the exhaustion and judicial review requirements when the IJ failed to meaningfully advise Defendant of his right to seek pre-hearing voluntary departure. *Id.* at 1204. Specifically, the Ninth Circuit in *Ortiz-Lopez* explained that "[w]aiver of appeal must be considered and intelligent, and '[w]e do not consider an alien's waiver of his right to appeal his deportation order to be considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the [IJ] fails to advise the alien of this possibility and give him the opportunity to develop the issue.' *Id.* at 1204 n.2 (citing *Ubaldo-Figueroa*, 364 F.3d at 1049). In that case, the Ninth Circuit further explained that "Ortiz-Lopez would have been deprived of the right to judicial review, because 'an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right.'" *Id.* (citing *Arrieta*, 224 F.3d at 1079 (finding a deprivation of judicial review where an alien was not informed of the right to seek relief from deportation)).

18

In the instant case, because the IJ failed to meaningful advise Defendant of his right to pre-hearing voluntary departure relief, Defendant's appeal waiver was similarly not considered and intelligent, and therefore, is excused. *See, e.g.*, *Rodriguez-Arroyo*, 467 F. App'x at 747 (finding in case where Defendant was not meaningfully advised of right to seek pre-hearing voluntary departure and never had opportunity to apply for voluntary departure or to present evidence of the factors favoring that relief, that defendant "was deprived of due process during the 2005 deportation hearing and his waiver of his right to appeal was not 'considered and intelligent'"); *Lopez-Menera*, 542 F. Supp. 2d at 1027–28 (A waiver is not "considered and intelligent" when "'the record contains an inference that the petitioner is eligible for relief from deportation,'" but the IJ fails to "'advise the alien of this possibility and give him the opportunity to develop the issue.'"); *Basulto-Pulido*, 219 F. App'x at 719 (same). Moreover, the fact that Defendant signed the Form I-826 does not change this conclusion because there is no evidence in the record that Defendant's signing of the Form I-826 was knowing and intelligent or that the officer informed Defendant of the contents of the form. *See, e.g.*, *Nungaray-Rubalcaba*, 229 F. App'x at 438 ("Nungaray–Rubalcaba was improperly deprived of judicial review and denied due process in the underlying deportation proceeding, because his waiver of a hearing through a written stipulation for removal was not considered and intelligent. When he signed the waiver, the INS Special Agent 'failed to inform him that he was eligible for a fast-track voluntary departure in lieu of removal, under 8 U.S.C. § 1229c(a).'" (citations omitted)); *Muro–Inclan*, 249 F.3d at 1182 (holding that a waiver of appeal is invalid if the immigrant is not advised of possible eligibility for relief from deportation).

Accordingly, because the IJ's failure to inform Defendant of his eligibility for pre-hearing voluntary departure violated Defendant's due process rights, and because this violation caused Defendant prejudice, the underlying order of removal cannot be used as an element of Defendant's conviction under § 1326. Therefore, the Court GRANTS Defendant's motion to dismiss the indictment on this ground.

**IV. CONCLUSION**

19

Case No. 17-CR-00061-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the indictment with prejudice.

**IT IS SO ORDERED.**

Dated: March 26, 2019

_Lucy H. Koh_
LUCY H. KOH
United States District Judge